## EXHIBIT A

# STATE OF SOUTH DAKOTA IN CIRCUIT COURT

# COUNTY OF LAWRENCE, FOURTH JUDICIAL CIRCUIT

| | |
|---|---|
| **MATT NASUTI,** | § Civil Action No. *CASE FILED 3/3/20 CASE NUMBER NOT YET AVAILABLE* |
| Plaintiff, | § |
| | § |
| vs. | § **SUMMONS** |
| | § |
| **WALMART, INC.,** | § |
| | § |
| Defendant. | § |

**TO THE ABOVE -NAMED DEFENDANT:**

YOU ARE HEREBY SUMMONED and required to serve upon Plaintiff, Matt Nasuti, whose address is 810 North Main Street, #221, Spearfish, S.D. 57783, an answer or other proper response to the Complaint which is also herein served on you this date. You are also required to file your answer or other proper response with the office of the clerk of the Circuit Court of the Fourth Judicial Circuit in Deadwood (County of Lawrence, State of South Dakota), all within 30 days after service of the summons on you, exclusive of the date of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

The Complaint seeks monetary, declaratory and injunctive relief, along with other prayed for judicial orders.

Dated this 3rd day of March, 2020.

Matt Nasuti, Plaintiff
810 North Main Street, #221
Spearfish, South Dakota, 57783
(413) 772-9802 (no voicemail)
*mattnasuti@hotmail.com*

# STATE OF SOUTH DAKOTA IN CIRCUIT COURT

# COUNTY OF LAWRENCE, FOURTH JUDICIAL CIRCUIT

| | | |
|---|---|---|
| MATT NASUTI, | § | Civil Action No. |
| | § | |
| Plaintiff, | § | **Complaint for Unlawful** |
| | § | **Employment Termination** |
| vs. | § | |
| | § | **Request for Jury Trial** |
| WALMART, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## STATEMENT OF JURISDICTION

1.  The Lawrence County Circuit Court has original jurisdiction over the causes of action. It has personal jurisdiction over the parties, and it is the correct venue as all elements of the offense occurred within this county and both parties reside and/or conduct business within this county.

2.  Plaintiff is a South Dakota resident currently residing in Spearfish, S.D.

3.  Defendant is a Delaware corporation, licensed to conduct business in South Dakota, with its headquarters located at 708 SW 8th Street, Bentonville, Arkansas 72716. It conducts business in numerous South Dakota locations including: 2825 1ST Avenue, Spearfish, S.D. 57783.

## SUMMARY

4.  On March 2, 2020, Plaintiff, an Assistant Store Manager for Wal-Mart in Spearfish, was summarily fired after months of retaliation by Store Manager Corey Heiting and four local corrupt Wal-Mart officials. This was in direct and sole response to his efforts to convince Heiting, a bully, to cease his abusive conduct toward multiple male and female employees. That abusive conduct included workplace violence of various types, discrimination against female employees, and just mean and cruel conduct.

1

5.      Internal efforts at the Corporate level to investigate all of this were rebuffed as Plaintiff could not locate any Corporate official willing to authorize an investigation.  The retaliation against Plaintiff dramatically increased after he elevated Heiting's unethical and unlawful conduct to corporate officers at Wal-Mart's headquarters in Bentonville, Arkansas.

6.      This lawsuit provides the Court and jury with an insider's view of the abusive and unlawful environment of Wal-Mart.  It correspondingly will permit both to do a lot of good for a lot of wonderful people.  These employees have no voice and no reasonable option other than to suffer in their low-pay, high stress positions, turning the other cheek to management abuses and corporate indifference.  The male and female victims of this Store Manager and his group continued to be abused.  They have no credible remedies against this colossal corporate with its armies of lawyers.  It is a monstrously uneven playing field.

## GENERAL BACKGROUND ALLEGATIONS

8.      On August 26, 2019, Plaintiff, a former USAF Captain, was hired as an Assistant Store Manager at Wal-Mart store #1543 (Spearfish, S.D.) at an annual salary of $48,500.00.

9.      Wal-Mart, Inc. is perhaps the largest employers in Spearfish (approximately 300 employees) and has monopoly power throughout South Dakota in violation of Title 37, Chapter 1.  This monopoly power, coupled with an intolerant, abusive and retaliatory management structure, means that it has a largely cowed workforce (especially among females), as people are fearful of losing their jobs if they speak up.

10.     Wal-Mart hires most employees at $12/hour, while its competitors, such as Whole Foods, start employees at $15/hour.  Wal-Mart grudgingly awards most of its employees at most a 2% annual pay raise.  With the 2019 Social Security Administration cost of living (COLA) calculated at 2.8%, that means that almost every Wal-Mart employee is losing money every year

2

they stay at Wal-Mart.   In contrast, Assistant Managers can earn up to about a $9,000 bonus per year as the company is flush with money.

11.     Wal-Mart has a new Soviet-inspired policy called "Better Workday" in which the workforce will be cut in Spearfish, with the remaining employees saddled with a larger daily workload, for less money.   It is "better" only for corporate finances.   Under these hostile policies, the stores can only function with ever increasing draconian and anti-union management, coupled with upper management indifference.   That recipe for abuse is the background to this case.

## INTRODUCTION TO WALMART CORPORATE "INVESTIGATIONS"

12.     All Wal-Mart company "investigations" appear to be conducted by its ethics office.   The victim files their complaint and is never advised of the results and findings.   If any investigation is conducted, it is superficially and non-credibly carried out by telephone.   Everything is conducted in secret and covered-up, regardless of whether the complaint is about:

        (1)     Sexual harassment or abuse;
        (2)     Racial or other discrimination;
        (3)     Management union-busting efforts;
        (4)     Money laundering through our money transfer systems;
        (5)     Drug dealing;
        (6)     Workplace violence;
        (7)     Alcohol sold to minors;
        (8)     Missing ammunition; or
        (9)     Illegal gun sales.

13.     This secrecy policy is company-driven, not legally mandated.   After filing his ethics complaint, Plaintiff was ordered by Wal-Mart official Kristi Yarnall not to contact or attempt to locate any witnesses for his side!   This "Gag-Rule" bars employees from discussing and warning other employees of a wide range of misconduct, threats, crimes and other unlawful behavior that might directly impact them, their safety and their welfare.   It is so smothering that an employee or manager is barred from hiring counsel and sharing any details with them!   Wal-Mart's HR

policies compromise workplace and public safety, and therefore violate public policy. This is especially true in the case of Wal-Mart as it has monopoly power, no formal personnel manual and no credible internal audit practices.

These types of blanket secrecy and un-transparency policies have not fared well legally. When challenged, they have been repeatedly reversed or modified, which remedy is sought in this action.

14.    Wal-Mart's Open Door/Ethics Complaint policy is simply a contrivance. It creates the appearance that management abuses can be safely reported and will be investigated. The goal is to tamper down union-attractiveness by creating the illusion that unions are not needed because Wal-Mart "cares." As a contrivance, it violates S.D. code section 60-9A-12.

## THE SUSPECTS / CO-CONSPIRATORS

| Corey Heiting: | Spearfish Wal-Mart Store Manager |
| Joshua Hehn: | Spearfish Wal-Mart Store Co-Manager |
| Manny Schryvers: | Spearfish Wal-Mart Store Co-Manager |
| Ardie Wardell: | Wal-Mart Market 430 Manager (Sioux Falls) |
| Kacie Hall: | Wal-Mart Market 430 Human Relations Manager (Sioux Falls) |

## TIMELINE

Mid-October -
February:

Plaintiff began advising Store Manager Heiting verbally and in e-mails to reverse his continuing abuse of two female supervisors.

Heiting's conduct included discriminating against a female supervisor on the basis of her sex (refusing to transfer her within the store, yet at the same time he transferred a male employee who was in the same situation) and then employing a disturbing hostility toward the female employee with punishing personnel decisions.

4

Heiting was also intentionally and abusively keeping another female

supervisor in a store job that, due to her medical conduction, was causing

her daily physical pain and suffering due to day-long heavy lifting.

That was just cruel and amounted to work-place violence. This abuse

would later expand to include his indifference toward another employee

who was subject to another verbally abusive and hostile male

manager. It was so abusive that the employee was reduced to tears.

Heiting and his group refused to transfer the employee out of harm's way.

Jan. 10th &  In retaliation against Plaintiff for his efforts, Heiting and his Co-Managers

Feb. 1st  manufactured two counselings against him for alleged work performance

issues that never occurred. Heiting and company never reduce either to

writing because the "misconduct" never occurred.

February 3th:  Plaintiff emailed Heiting to report more abuse of store employees and was

called into yet another counseling session by Heiting and company.

February 14th:  Heiting and his Co-Managers issued Plaintiff a substandard evaluation,

which denied him a pay raise. It violated numerous Wal-Mart policies,

including that it does not explain why this punitive action is being taken.

February 18th:  Plaintiff filed an Ethics Complaint against Heiting & his Co-Managers

with Wal-Mart's ethics office and it's Executive VP for Personnel.

Defendants are immediately made aware of the filing.

February 24th:  Heiting and his Co-Managers issued Plaintiff an "Orange" Ethics

Disciplinary Citation in retaliation for his ethics complaint. The document

on its face reveals no ethics violation.  It was simply retaliation.  This
punitive action reduced Plaintiff's annual bonus.

February 25th:   Defendant Wardell visited the Spearfish store and refused to fix any of
Heiting's misconduct toward the store's employees, ratifying it all.

February 27th   Defendant Hall improperly denied Plaintiff's leave (pending the
investigation) request and (via e-mail) instead summarily suspended
Plaintiff without pay.

March 2nd:   Plaintiff was informed by email from Defendant Hall that she was
immediately terminating his employment, without explanation.  Plaintiff
was not provided notice of, nor is he aware of any internal administrative
appeal mechanisms within the company regarding his termination.

The above is only a partial listing of Heiting's mistreated employees.  Plaintiff repeatedly
contacted Julie Murphy, Wal-Mart USA's Vice-President for Personnel and Lance Lanciault
(Chief Ethics Official) for help.  It was all in vain.

## CLAIM FOR RELIEF

### Breach of Employment Agreement/Unlawful Termination of Plaintiff
### in Violation of Public Policy

15.   Plaintiff adopts by reference all the above information and allegations as though fully set
forth herein.

16.   Plaintiff, acting within the scope of his employment as a salaried manager for Wal-Mart,
attempted since October 2019 to protect several vulnerable employees at his store from store
management abuses.

17.   Beginning in January 2020, Plaintiff suffered increasing acts of whistleblower retaliation
from Defendant as a direct result of his protective efforts.  This retaliation was in bad faith,

6

malicious, intentional and contrary to both Wal-Mart HR policies and South Dakota public policy. The retaliation dramatically increased in February of 2020. This included three meritless counseling sessions, abusive directions, a dismal annual evaluation (with no explanation), denial of an annual pay increase, an invented ethics citation, a reduction in his annual bonus, denial of leave, suspension without pay (and without any discussion or recourse) and ultimately, termination. The latter also may have been unlawful under Wal-Mart's personnel manual because a low-level official such as Defendant Hall does not seem to have the authority to make such a decision. Many of the above were undertaken after Plaintiff had filed a formal ethics complaint with Wal-Mart Corporate.

18.     These actions breached the actual or implied employment agreement/relationship between the parties. Defendant also violated its obligation (in every agreement) of good faith and fair dealing. Defendant's tolerance for manager abuses, lack of concern over mistreatment of its employees and retaliation against Plaintiff for objecting to Heiting's unethical and unlawful actions, violates clear public policy in South Dakota and contradicts sentiments of the general public at large. Heiting and his group acted with impermissible motives and reasons. They acted in order to protect themselves from accountability for their misconduct. By firing Plaintiff, they removed an obstacle to their continuing misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, for himself and the victims he is seeking to protect, prays for judgment as follows:

1.     Compensatory Damages for lost pay, bonus and benefits, in the present amount of $1,000, or according to proof as Plaintiff's weekly damages (loss of back/front pay) increases;

7

2.     Declaratory relief in conformance with 21-24-1 in order to: (a) help and protect each of the individual female and male employee-victims at the Spearfish store, (b) resuscitate Wal-Mart's contrived and non-credible internal audit practices, and (c) identify and remedy Defendant's unfair labor practices under South Dakota law;

3.     A Final Injunction to remedy any and all Wal-Mart corporate misconduct in this case, including (a) an Order directing Wal-Mart, Inc. and all its affiliates to immediately begin reporting all their preliminary/final investigative findings in writing to every employee-victim, and (b) an Order that abolishes Wal-Mart's "Gag-Rule" on discussing and warning employees of a wide range of misconduct, threats, crimes and other unlawful behavior that might directly impact them, their safety and their welfare;

4.     An order of reinstatement for Plaintiff, with such protections and transfers of personnel as the Court may deem necessary in order to prevent still further retaliation and abuse;

5.     All other such relief that the Court is empowered to grant and which it shall deem appropriate in order to correct and remedy Defendant's unethical and abusive practices; and

6.     Costs and interest as permitted by law.

Respectfully submitted,

— S —

March 3, 2020          By:

MATT NASUTI
Plaintiff, *Pro Se*
810 North Main Street, #221
Spearfish, S.D.  57783
(413) 772-9802 (no voicemail)
*mattnasuti@hotmail.com*

8

Matt Nasuti
810 N. Main Street, #221
Spearfish, S.D. 57783

 

U.S. POSTAGE PAID
FCM LG ENV
SPEARFISH, SD
57783
MAR 11, 20
AMOUNT

**$1.40**

1000          57501          R23D4M114312-03

# CT Corporation System
# 319 South Coteau Street
# Pierre, S.D.  57501

# STATE OF SOUTH DAKOTA IN CIRCUIT COURT

# COUNTY OF LAWRENCE, FOURTH JUDICIAL CIRCUIT

| | |
|---|---|
| MATT NASUTI, | § Civil 20-45 |
| | § |
| Plaintiff, | § First Amended Complaint for: |
| | § (1) Breach of Employment |
| vs. | § Agreement; and |
| | § (2) Retaliatory Discharge |
| WALMART, INC., | § |
| | § Request for Jury Trial |
| Defendant. | § |

## STATEMENT OF JURISDICTION

1.      The Lawrence County Circuit Court has original jurisdiction over the causes of action.  It has personal jurisdiction over the parties and it is the correct venue as all elements of the offenses occurred within this county and both parties reside and/or conduct business in this county.

2.      Plaintiff is a South Dakota resident currently residing in Spearfish, S.D.

3.      Defendant is a Delaware corporation, licensed to conduct business in South Dakota, with its headquarters located at 708 SW 8th Street, Bentonville, Arkansas 72716. It conducts business in numerous South Dakota locations including: 2825 1ST Avenue, Spearfish, S.D. 57783.

## SUMMARY

4.      On March 2, 2020, Plaintiff, an Assistant Store Manager for Wal-Mart in Spearfish, was summarily fired after months of retaliation by Store Manager Corey Heiting and four local corrupt Wal-Mart officials.  This was in direct and sole response to his efforts to convince Heiting, a bully, to cease his abusive and/or illegal conduct toward multiple male and female employees.   That conduct included workplace violence of various types, intimidation,

1

discrimination against female employees, refusal to accommodate an employee's disability, unsafe working conditions, and just mean and cruel conduct.

5.      Internal efforts at the Corporate level to investigate all of this were rebuffed as Plaintiff could not locate any Corporate official willing to authorize an investigation. The retaliation against Plaintiff dramatically increased after he elevated and apparently because he elevated Heiting's unethical and unlawful conduct to corporate officers at Wal-Mart's headquarters in Bentonville, Arkansas.

6.      This lawsuit provides the Court and jury with an insider's view of the abusive and unlawful environment of Wal-Mart. It correspondingly will permit both to do a lot of good for a lot of wonderful people. These employees have no voice and no reasonable option other than to suffer in their low-pay, high stress positions, turning the other cheek to management abuses and corporate indifference. The male and female victims of this Store Manager and his group continued to be abused. They have no credible remedies against this colossal corporate with its armies of lawyers. It is a monstrously uneven playing field.

## GENERAL BACKGROUND ALLEGATIONS

7.      On August 26, 2019, Plaintiff, a former USAF Captain, was hired as an Assistant Store Manager by Wal-Mart, Inc. at store #1543 (Spearfish, S.D.) at an annual salary of $48,500.00. There was no formal employment contract, only an e-mail offer that was electronically accepted.

8.      Wal-Mart, Inc. is perhaps the largest employer in Spearfish (approximately 300 employees). It has monopoly power throughout South Dakota, which is a violation of Title 37, Chapter 1. This monopoly power, coupled with an intolerant, abusive and retaliatory management structure, means that it has a largely cowed workforce, as people are fearful of losing their jobs if they speak up.

2

9.      Wal-Mar, Inc. has annual revenues of approximately $514 billion and gross profits of $129 billion.  Its store managers, with bonus, can earn more than a $1/4 million a year, its co-managers in excess of $100,000 a year and its numerous assistant managers in excess of $64,000 a year.

Despite the above, Wal-Mart, Inc. hires most employees at $12/hour, while its competitors, such as Whole Foods, start employees at $15/hour.  Wal-Mart also does not guarantee to its full-time employees a 40-hour work-week.  Currently the Spearfish store, due to poor management, is over its budgeted hours, so most employees have seen their hours arbitrarily cut to about 37 or 38 hours per week.

Wal-Mart grudgingly awards most of its employees at most a 2% annual pay raise.  With the 2019 Social Security Administration cost of living (COLA) calculated at 2.8%, that means that almost every Wal-Mart employee is losing money every year they stay at Wal-Mart

10.     Wal-Mart has a new Soviet-inspired policy called "Better Workday" in which the workforce will be cut in Spearfish, with the remaining employees saddled with a larger daily workload, for less money.  It is "better" only for corporate finances.  Under these hostile policies, the stores can only function with ever increasing draconian and anti-union management, coupled with upper management indifference.  That recipe for abuse is the background to this case.

## INTRODUCTION TO WALMART CORPORATE "INVESTIGATIONS"

11.     WalMart, Inc. proclaims that it "investigates" all complaints of abuse, illegal conduct and unethical behavior by its managers.  As a result, there is no need for unions because WalMart itself is protecting its employees.  The reality is far different.

All Wal-Mart company "investigations" appear to be conducted by its ethics office.  The victim files their complaint and is never advised of the results and findings.  If any investigation

3

is conducted, it is superficially and non-credibly carried out by telephone.   Everything is conducted in secret and the results covered-up, regardless of whether the complaint is about:

      (1)     Sexual harassment or abuse;
      (2)     Racial or other discrimination;
      (3)     Management union-busting efforts;
      (4)     Money laundering through our money transfer systems;
      (5)     Drug dealing;
      (6)     Workplace violence;
      (7)     Alcohol sold to minors;
      (8)     Missing ammunition; or
      (9)     Illegal gun sales.

This secrecy policy is company-driven, not legally mandated.

12.     After filing his management complaint, Plaintiff was ordered by Wal-Mart official Kristi Yarnall not to contact or attempt to locate any witnesses for his side!  This "Gag-Rule," which she referred to as part of the Wal-Mart Statement of Ethics (secrecy is ethical – transparency is unethical), bars employees from discussing and warning other employees of a wide range of misconduct, threats, crimes and other unlawful behavior that might directly impact them, their safety and their welfare.   It is so smothering that an employee or manager is barred from hiring counsel and sharing any details with them!  Wal-Mart's human relations policies compromise workplace and public safety, and therefore violate public policy.  This is especially true in the case of Wal-Mart as it has monopoly power and no credible internal audit practices.   These types of blanket secrecy and un-transparency policies have not fared well legally.   When challenged, they have been repeatedly reversed or modified, which remedy is sought in this action.

13.     Wal-Mart's Open Door/Ethics Complaint policy is simply a contrivance.  There are claims of confidentiality and assurances that there will be no retaliation but both are illusions, as established in the case at bar.  This policy creates the appearance that management abuses can be

safely reported and will be investigated. The goal is to tamper down union-attractiveness by creating the illusion that unions are not needed because Wal-Mart "cares." The reporting, as in Plaintiff's case, is then used to identify, target and eliminate ethical and outspoken employees from the workforce. As a contrivance, this policy violates South Dakota code section 60-9A-12.

14.                          **THE SUSPECTS / CO-CONSPIRATORS**

      Corey Heiting:      Spearfish Wal-Mart Store Manager

      Joshua Hehn:      Spearfish Wal-Mart Store Co-Manager

      Manny Schryvers:      Spearfish Wal-Mart Store Co-Manager

      Ardie Wardell:      Wal-Mart Market 430 Manager (Sioux Falls)

      Kacie Hall:      Wal-Mart Market 430 Human Relations Manager (Sioux Falls)

15.                          **TIMELINE**

Mid-Oct. 2019 -      Plaintiff began advising Heiting verbally and in e-mails to reverse his

February 2020:      his continuing abusive/illegal conduct regarding two female supervisors.

      Heiting's conduct included discriminating against a female supervisor on

      the basis of her sex (refusing to transfer her within the store, yet at the

      same time he transferred a male employee who was in the same situation)

      and then employing a disturbing hostility toward the female employee

      with punishing personnel decisions.

      Heiting was also intentionally and abusively keeping another female

      supervisor in a store job that, due to her medical conduction/disability,

      was causing her daily physical pain and suffering due to day-long heavy

      lifting. That was just cruel and amounted to work-place violence. This

      abuse would later expand to include his indifference toward another

      employee who was subject to another verbally abusive and hostile male

5

manager. It was so abusive that the employee was reduced to tears. Heiting and his group refused to transfer the employee out of harm's way.

Jan. 10th & February 1st: In retaliation against Plaintiff for his efforts, Heiting and his Co-Managers manufactured two counselings against him for alleged work performance issues that never occurred. Heiting and company never reduce either to writing because the "misconduct" never occurred.

February 3th: Plaintiff emailed Heiting to report more abuse of store employees and was called into yet another counseling session by Heiting and company.

February 14th: Heiting and his Co-Managers issued Plaintiff a substandard evaluation, which denied him a pay raise. It violated numerous Wal-Mart policies, including that it does not explain why this punitive action is being taken.

February 18th: Plaintiff filed an Ethics Complaint against Heiting & his Co-Managers with Wal-Mart's ethics office and it's Executive VP for Personnel. Defendants are immediately made aware of the filing. The matter was allegedly assigned to a Kristi Yarnall in Wal-Mart, Inc's Bentonville, Arkansas office. She never did anything that Plaintiff was aware of. She informed Plaintiff in writing that if she investigates, all investigations are conducted remotely by telephone.

February 24th: Heiting and his Co-Managers issued Plaintiff an "Orange" Ethics Disciplinary Citation in retaliation for his ethics complaint. The document on its face reveals no ethics violation. It was simply retaliation. This punitive action reduced Plaintiff's annual bonus.

6

February 25th:       Defendant Wardell visited the Spearfish store and refused to fix any of

                     Heiting's misconduct toward the store's employees, ratifying it all.

February 27th:       Defendant Hall wrongfully denied Plaintiff's leave request  and instead

                     summarily suspended Plaintiff without pay.

March 2nd:           Plaintiff was informed by email from Defendant Hall that she was

                     immediately terminating his employment, without explanation.  Plaintiff

                     was not provided notice of, nor is he aware of any internal administrative

                     appeal mechanisms within the company regarding his termination.  After

                     receipt of this notice, Plaintiff was abandoned by his Ethics Case

                     Manager, Kristi Yarnall, who never contacted him again.

March 9th:           At 11:56 a.m., Plaintiff received an insulting e-mail from "Cal" (no last

                     name) at Wal-Mart's Global Ethics office inquiring if Plaintiff had ever

                     talked over his concerns with his store manager.  Cal either never read or

                     just ignored Plaintiff's complaint.  Corporate does not even pretend to read

                     the complaints or investigate them.  Eight minutes after Cal's e-mail,

                     Plaintiff received a formal notice closing out his ethics case with no

                     explanation.

Plaintiff repeatedly and in vain contacted Julie Murphy, Wal-Mart Vice-President for Personnel

and Lance Lanciault (Chief Ethics Official) for help.

### FIRST CLAIM FOR RELIEF
### Breach of Employment Agreement/Relationship
### in Violation of Public Policy

16.      Plaintiff adopts by reference all the above information and allegations as though fully set

forth herein.

17.     Plaintiff, acting within the scope of his employment as a salaried manager for Wal-Mart, attempted since October 2019 to protect several vulnerable employees at his store from store management abuses.

18.     Beginning in January 2020, Plaintiff suffered increasing acts of whistleblower retaliation from Defendant as a direct result of his protective efforts.  This retaliation was in bad faith, malicious, intentional and contrary to both Wal-Mart's published human relations policies and South Dakota public policy.  The retaliation dramatically increased in February of 2020.  This included three meritless counseling sessions, abusive directions, a dismal annual evaluation (with no explanation), denial of an annual pay increase, an invented ethics citation, a reduction in his annual bonus, denial of leave, suspension without pay (and without any discussion or recourse) and ultimately, termination.  The latter also may have been unlawful under Wal-Mart's personnel manual because a low-level official such as Defendant Hall does not seem to have the authority to make such a decision.  Many of the above were undertaken after Plaintiff had filed a formal ethics complaint with Wal-Mart Corporate.

19.     Defendant's unlawful activities included:

(a)     Discrimination in violation of the South Dakota Human Relations Act, specifically Chapter 20-13, and 20-13-1 (16) unfair or discriminatory practices, and 20-13-26.

(b)     Abusing a female employee with a known medical disability by keeping her in a "heavy job" (SDLRC Rule 20:03:09:05) that was causing her daily pain, suffering and presumably injury [in violation of 20-13-26];

(c)     Supporting work-place violence, which includes any verbal abuse and/or pain & suffering and injuries intentionally caused by management;

8

(d)     Violating Chapters 20-9-1 and 20-9-6, which guarantee all persons the right to be free from bodily harm and injury caused by another person;

(e)     Violating Chapter 60-2-3 (employer negligence);

(f)     Violating Chapter 60-12-21 (wage discrimination);

(f)     Violating Chapter 60-8-1 (intimidation, a company-wide practice);

(g)     Defendant violated the universal common law guarantee that all employees are to be provided with a safe and healthy workplace environment.  See the United Nation's International Covenant on Economic, Social and Cultural Rights (1966), [not yet ratified by the U.S. Congress].  This is the underlying basis for the whole concept in South Dakota of Workers Compensation (for workplace injuries).

20.     Defendant's actions breached the actual or implied employment agreement/relationship between the parties.  Defendant also violated its obligation (in every agreement) of good faith and fair dealing.  Defendant's tolerance for manager abuses, lack of concern over mistreatment of its employees and retaliation against Plaintiff for objecting to Heiting's unethical and unlawful actions, violates clear public policy in South Dakota and contradicts sentiments of the general public at large.   Heiting and his group acted with impermissible motives and reasons.  They acted in order to protect themselves from accountability for their misconduct.  By firing Plaintiff, they removed an obstacle to their continuing misconduct.

21.     Plaintiff's termination was unlawful for multiple reasons, including because it was retaliatory, contrary to Wal-Mart's own personnel manual/policies and it violated one or more "substantial public policy principles" and therefore is actionable (Johnson v. Kreiser's Inc., 433 N.W. 2d 225 (S.D. 1988).   It was also unlawful under Wal-Mart's personnel manual or equivalent because a low-level official such as Defendant Hall did not have the delegated

9

corporate authority to make such a decision.  Many of the above were undertaken after Plaintiff had filed a formal ethics complaint with Wal-Mart Corporate.

**SECOND (Alternative) CLAIM FOR RELIEF**
**Public Policy Tort of Retaliatory Discharge**
**Tiede v. Cortrust Bank, N.A. 748 N.W. 2d 748 (S.D. 2008)**
**Hallberg v. South Dakota Board of Regents et al, 12/31/19, S.D. Supreme Court**

22      Plaintiff adopts by reference all the above information and allegations as though fully set forth herein.

23.     Plaintiff, as a salaried manager for Wal-Mart, attempted since October 2019 to protect several vulnerable employees at his store from store management abuses.

24.     Beginning in January 2020, Plaintiff suffered increasing acts of whistleblower retaliation from Defendant as a direct result of his protective efforts.  This retaliation was in bad faith, malicious, intentional and contrary to both Wal-Mart human relations policies and South Dakota public policy.  The retaliation dramatically increased in February of 2020.  This included three meritless counseling sessions, abusive directions, a dismal annual evaluation (with no explanation), denial of an annual pay increase, an invented ethics citation, a reduction in his annual bonus, denial of leave, suspension without pay (and without any discussion or recourse) and ultimately, termination.

25.     Plaintiff's termination was unlawful for multiple reasons, including that it was retaliatory, contrary to Wal-Mart's own personnel manual/policies and it violated one or more "substantial public policy principles" and therefore is actionable (Johnson v. Kreiser's Inc., 433 N.W. 2d 225 (S.D. 1988).  It was also unlawful under Wal-Mart's personnel manual or equivalent because a low-level official such as Defendant Hall did not have the delegated corporate authority to make such a decision.  Many of the above were undertaken after Plaintiff had filed a formal ethics complaint with Wal-Mart Corporate.

10

26.     Defendant's unlawful activities included:

(a)     Discrimination in violation of the South Dakota Human Relations Act, specifically Chapter 20-13, and 20-13-1 (16) unfair or discriminatory practices, and 20-13-26.

(b)     Abusing a female employee with a known medical disability by keeping her in a "heavy job" (SDLRC Rule 20:03:09:05) that was causing her daily pain, suffering and presumably injury [in violation of 20-13-26];

(c)     Supporting work-place violence, which includes any verbal abuse and/or pain & suffering and injuries intentionally caused by management;

(d)     Violating Chapters 20-9-1 and 20-9-6, which guarantee all persons the right to be free from bodily harm and injury caused by another person;

(e)     Violating Chapter 60-2-3 (employer negligence);

(f)     Violating Chapter 60-12-21 (wage discrimination);

(f)     Violating Chapter 60-8-1 (intimidation, a company-wide practice);

(g)     Defendant violated the universal common law guarantee that all employees are to be provided with a safe and healthy workplace environment.  See the United Nation's International Covenant on Economic, Social and Cultural Rights (1966), [not yet ratified by the U.S. Congress].   This is the underlying basis for the whole concept in South Dakota of Workers Compensation (for workplace injuries).

27.     Defendant's actions, which ultimately included Plaintiff's summary termination with no appeal rights, were wrongful, tortuous and were caused solely and/or primarily as a retaliation for Plaintiff's whistle-blowing activities which were in furtherance of one or more clear mandates of public policy and/or common law in South Dakota.

11

28.      Defendant's tolerance for manager abuses, lack of concern over mistreatment of its employees and retaliation against Plaintiff for objecting to Heiting's unethical and unlawful actions, violates clear public policy in South Dakota and contradicts sentiments of the general public at large.    Heiting and his group acted with impermissible motives and reasons.  They acted in order to protect themselves from accountability for their misconduct.  By firing Plaintiff, they removed an obstacle to their continuing misconduct.

29.      Defendant/acted intentionally, with bad faith and with malice.    Defendant acted predatorily, with absolutely no fear of consequences, with a lack of conscious, and in callous disregard for the well-being and self-respect of Plaintiff and numerous female and male employees at the Spearfish store.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, for himself and the victims he is seeking to protect, prays for judgment as follows:

1.      Compensatory Damages for lost pay, bonus and benefits, in the present amount of $1,000, or according to proof as Plaintiff's weekly damages (loss of back/front pay) increases;

2.      Punitive/Exemplary Damages in an amount necessary to both punish and convince Defendant that it must not again act with oppression, malice and intimidation with its employees;

3.      Declaratory relief in conformance with 21-24-1 in order to: (a)  help and protect each of the individual female and male employee-victims at the Spearfish store, (b) resuscitate Wal-Mart's contrived and non-credible internal audit practices, and (c) identify and remedy Defendant's unfair labor practices under South Dakota law;

4.      A Final Injunction to remedy any and all Wal-Mart corporate misconduct in this case, including an Order directing Wal-Mart, Inc. and all its affiliates/subsidiaries:

<u>Matt Nasuti v. Wal-Mart, Inc.   Civil # 20-45 (Circuit Court, Laurence County)</u>

## <u>Certificate of Service</u>

I am over the age of eighteen years.  My mailing address is 810 N. Main Street, #221, Spearfish,

S.D. 57783.  On March 11, 2020, I will serve the following document:

**First Amended Complaint for: (1) Breach of Employment Agreement; and (2) Retaliatory Discharge**

on the following persons by USPS first class mail:

CT Corporation System
319 South Coteau Street
Pierre, S.D.  57501
<u>Registered Agent for Defendant WalMart, Inc.</u>

— S —

Matt Nasuti

14

(a) to immediately end most remote investigations, especially where witness credibility has to be assessed, as telephone interviews are not credible,

(b) to immediately begin reporting all their preliminary/final investigative findings in writing to every employee-victim,

(c) to immediately cease informing their employees that Wal-Mart has either a confidentiality component or a anti-retaliation component to either its Open Door or Ethics Complaint processes, and

(d) an Order that abolishes or modifies Wal-Mart's "Gag-Rule" on discussing and warning employees of a wide range of reported misconduct, threats, crimes and other unlawful behavior that might directly impact them, their safety and their welfare;

5.      An order of reinstatement for Plaintiff, with such protections and transfers of personnel as the Court may deem necessary in order to prevent still further retaliation and abuse;

6.      All other such relief that the Court is empowered to grant and which it shall deem appropriate in order to correct and remedy Defendant's unethical and abusive practices; and

7.      Costs and interest as permitted by law.

Respectfully submitted,

- S -

March 11, 2020                 By:

MATT NASUTI
Plaintiff, *Pro Se*
810 North Main Street, #221
Spearfish, S.D. 57783
(413) 772-9802 (no voicemail)
*mattnasuti@hotmail.com*

13